IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

JASON ANDREW AUSTIN,

        Plaintiff,

    v.

JAMES ASHCRAFT et al.,

        Defendants.

Civil Action 1:22-cv-159
Judge Timothy S. Black
Magistrate Judge Kimberly A. Jolson

## REPORT AND RECOMMENDATION

This matter is before the Court on several motions: a Motion for Summary Judgment brought by Defendants James Ashcraft, Quinnlan Berry, and Demetrius Yates (Doc. 30)[1]; another Motion for Summary Judgment brought by Defendant John Boykin (Doc. 31); and Plaintiff's Motion to Appoint Counsel (Doc. 41).

**I.    BACKGROUND**

Plaintiff brings this action under 42 U.S.C. § 1983 against Defendants James Ashcraft, Demetrius Yates, John Boykin, and Quinnlan Berry. (Doc. 3 at 2–3). Plaintiff alleges that each Defendant violated his rights under the Eighth Amendment while he was incarcerated at the Lebanon Correctional Institution ("LeCI"). After an initial screening of his Complaint, Plaintiff was permitted to proceed on his Eighth Amendment claims against the Defendants in their individual capacities only. (Docs. 4, 17).

Plaintiff says his troubles began on December 10, 2021, when an attack by another inmate left him with a head wound. (Doc. 1-4 at 5). Plaintiff was then placed in restrictive housing

---

[1] A duplicate motion was filed at Doc. 28. It was not text-searchable, however, and after the Clerk of Court issued a notice of non-compliance (Doc. 29), it was refiled (Doc. 30). The Undersigned refers to the latter filed Motion throughout this Report and Recommendation.

pending investigation of the attack. (*Id.*) On December 14, 2021, sitting in his cell with six staples in his head, Plaintiff claims he had a seizure and was brought to the prison infirmary. (*Id.*). Defendant Yates, a corrections officer, escorted Plaintiff from his cell to the infirmary—where Defendant Ashcraft, also a corrections officer, was stationed. (Doc. 30-3, ¶¶ 3–5; Doc. 30-2, ¶¶ 3–4). Ashcraft let Yates and Plaintiff through the infirmary gate and led them into an exam room (*id.*, ¶ 5), where Plaintiff was seen by a nurse (Doc. 30-1).

Plaintiff, shackled and placed in a restraint chair, was medically examined, but showed no visible signs or symptoms of seizure activity. (*Id.*). As Plaintiff was being removed from the restraint chair and stood, he was lightheaded and dizzy. (Doc. 1-4 at 5). Ashcraft then allegedly accused Plaintiff of faking his symptoms, slammed him to the ground, and slapped him in the head several times, which reopened Plaintiff's head wound and briefly rendered him unconscious. (*Id.* at 3; Doc. 3 at 5). Yates purportedly witnessed this assault but did not intervene. (*Id.*). Plaintiff also says that Defendant Boykin—a dentist working in the infirmary (Doc. 33, ¶ 7)—witnessed the assault from a nearby dental office but did not intervene (Doc. 1-4 at 3–4).

Following the assault, Plaintiff picked himself up off the floor and was escorted by Yates out of the exam room and back to his cell. (Doc. 1-4 at 3). When he arrived there, corrections officers—including Defendant Berry, a corrections officer Captain (Doc. 30-4, ¶ 3)—ordered Plaintiff's cellmate, Michael Keister, to present his hands through the cuff port so he could be restrained (Doc. 1-4 at 10). Keister did not immediately comply, and Berry told him he needed to do so or she would use pepper spray. (*Id.*). She then sprayed Keister, and he was restrained and removed from the cell to be transported elsewhere. (*Id.*).

Plaintiff told Berry he was reluctant to enter the recently sprayed cell, given his open head wound. (*Id.*). He says Berry responded, "That's what the fuck you get, get in there before I spray

2

you." (*Id.*). Plaintiff complied, but he says the residual spray in the cell burned his eyes and the wound on his head, restricted his breathing, and caused him to urinate himself. (*Id.*). When another officer brought Keister back to the cell twenty minutes later, Plaintiff purportedly asked to see medical for treatment but was ignored. (*Id.*).

Now, all Defendants move for summary judgment. (Docs. 30, 31). The Motions are fully briefed and ripe for consideration. (Docs. 38, 39).

## II. STANDARD

Summary judgment is granted when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Summary judgment is appropriately entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). When a defendant shows there is insufficient evidence to support any element of the plaintiff's claim and moves for summary judgment, the burden shifts to the plaintiff to demonstrate a genuine issue for trial on which a reasonable jury could return a verdict in its favor. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). Evidence is viewed in the light most favorable to the nonmoving party, meaning that "any direct evidence offered by the [nonmovant] in response to a summary judgment motion must be accepted as true." *Muhammad v. Close*, 379 F.3d 413, 416 (6th Cir. 2004), *citing Liberty Lobby*, 477 U.S. at 251–52, and *Adams v. Metiva*, 31 F.3d 375, 382 (6th Cir. 1994). Ultimately, the Court asks "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Liberty Lobby*, 477 U.S. at 251–52.

### III. DISCUSSION

Plaintiff alleges that Ashcraft and Berry both subjected him to cruel and unusual punishment, in violation of the Eighth Amendment. (Doc. 3 at 3–5). He further says that Yates and Boykin, because they witnessed Ashcraft's assault, had a duty to intervene and prevent the harm. (*Id*.). The Undersigned considers the claims against each Defendant in turn, beginning with Ashcraft's excessive force, proceeding to Yates and Boykin's failure to intervene, and closing with Berry's deliberate indifference to Plaintiff's health and safety. The Undersigned then briefly addresses Plaintiff's Motion to Appoint Counsel.

**A. James Ashcraft**

The thrust of Ashcraft's argument seems to be that he is entitled to summary judgment because there was no underlying use of force. (Doc. 30 at 4).

Both Ashcraft and Yates admit they were in the medical exam room where the alleged assault occurred. But their version of what happened in that room and afterwards differs drastically from Plaintiff's. Both deny that Ashcraft used any force against Plaintiff following his medical evaluation. Ashcraft declares, "Plaintiff [ ] claims, 'I was assaulted in shackles and handcuffs by Ashcraft by smacking me in the head several times and slamming me on my head.' That never happened. I did not assault [Plaintiff] at any point in time." (Doc. 30-2, ¶ 5) (emphasis in original). Yates agrees that Ashcraft did not use any force against Plaintiff. (Doc. 30-3, ¶ 5). And Boykin—working that day in the infirmary's dental office—maintains that he saw Ashcraft and another officer escorting an inmate *from* the exam room only; he claims to have not witnessed anything that happened within the exam room, nor any use of force. (Doc. 33, ¶¶ 8, 9). Said plainly, Ashcraft and Yates agree that no assault occurred in the exam room, while Boykin denies seeing anything that happened in the exam room altogether.

4

Essentially, then, Plaintiff's claim against Ashcraft comes down to a credibility determination. Does one believe Plaintiff's version of events, in which Ashcraft assaulted him unbidden and continued to do so after he was on the ground? Or does one believe the prison officials, who say no assault occurred altogether? "'Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge,' when ruling on a motion for summary judgment." *Helphenstine v. Lewis Cty., Ky.*, 60 F.4th 305, 314 (6th Cir. 2023) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)). Notably, Defendants submitted only their own affidavits, a nursing medical exam report about Plaintiff's medical visit, and a use-of-force review related to Defendant Berry's use of pepper spray as evidence in support of their Motion for Summary Judgment. (Docs. 30-1–30-5). None of the evidence forecloses Plaintiff's narrative or bolsters Ashcraft and Yates's such that Plaintiff's becomes incredible. So, the ultimate credibility determination about whether an assault occurred should be reserved for the jury.

Still more, were a jury to believe Plaintiff's version of events, it could find that he demonstrated both the subjective and objective components of his excessive force claim. "The Eighth Amendment prohibition on cruel and unusual punishment protects prisoners from the unnecessary and wanton infliction of pain." *Rafferty v. Trumbull Cty., Ohio*, 915 F.3d 1087, 1093 (6th Cir. 2019) (quoting *Villegas v. Metro. Gov't of Nashville*, 709 F.3d 563, 568 (6th Cir. 2013)). "[T]he Supreme Court set forth the standard for analyzing excessive force claims under the Eighth Amendment: 'whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm.'" *Combs v. Wilkinson*, 315 F.3d 548, 556 (6th Cir. 2002) (quoting *Hudson v. McMillian*, 503 U.S. 1, 7 (1992)). "To make out a claim under the

5

Eighth Amendment, the prisoner must satisfy both an objective and a subjective component." *Rafferty*, 915 F.3d at 1094 (quoting *Williams v. Curtin*, 631 F.3d 380, 383 (6th Cir. 2011)).

"The subjective component focuses on the state of mind of the prison officials." *Williams*, 631 F.3d at 383. Courts evaluate "whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm." *Id.* (quoting *Hudson*, 503 U.S. at 6). In making this inquiry, the Court should consider the need for the use of force, the relationship between that need and the type and amount of the force used, the threat reasonably perceived by the official, the extent of the injury inflicted, and any efforts made to temper the severity of a forceful response. *Hudson*, 503 U.S. at 7 (quoting *Whitley v. Albers*, 475 U.S. 312, 321 (1986)).

"The objective component requires the pain inflicted to be sufficiently serious." *Rafferty*, 915 F.3d at 1094 (citing *Williams*, 631 F.3d 383). This inquiry is "contextual and responsive to 'contemporary standards of decency.'" *Hudson*, 503 U.S. at 8 (quoting *Estelle*, 429 U.S. at 104). "The seriousness of the injuries [is] not dispositive; as the Supreme Court has held, '[w]hen prison officials maliciously and sadistically use force to cause harm, contemporary standards of decency always are violated . . . whether or not significant injury is evident.'" *Williams*, 631 F.3d at 383 (quoting *Hudson*, 503 U.S. at 9). But "[t]hat is not to say that every malevolent touch . . . gives rise to a federal cause of action." *Hudson*, 503 U.S. at 9. The Eighth Amendment does not protect against "*de minimis* uses of physical force[.]" *Rafferty*, 915 F.3d at 1094 (quoting *Hudson*, 503 U.S. at 9–10).

Regarding the subjective component, the nursing medical exam report does indicate that during the exam Plaintiff "became irate, combative (in restraints) and was escorted from medical per security and ambulated of his own will." (Doc. 30-1). As discussed above, Plaintiff's

description of the alleged assault occurs after he was removed from the restraint chair: he says he became lightheaded, and then Ashcraft slammed him to the ground and slapped him in the head several times. (Doc. 1-4 at 3, 5). So, even if Plaintiff was combative while in the restraint chair, it does not necessarily follow that there was a need for force after he was removed from the restraint chair. Moreover, the Court cannot consider the relationship between that need and the type and amount of the force used, whether the threat reasonably perceived by the official, the extent of the injury inflicted, and any efforts made to temper the severity of a forceful response when Ashcraft's account is that no such force was used. *See Hudson*, 503 U.S. at 7 (quoting *Whitley v. Albers*, 475 U.S. 312, 321 (1986)). So, viewing the evidence in the light most favorable to Plaintiff, a reasonable jury could determine that Ashcraft demonstrated a malicious or sadistic intent to cause harm by forcing a shackled prisoner to the ground and slapping him in the head (where he had a visible preexisting wound) several times. *See Alspaugh v. McConnell*, 643 F.3d 162, 168–69 (6th Cir. 2011) (finding genuine issue of material fact as to whether prison officials applied force maliciously and sadistically to cause harm where plaintiff disputed any force was necessary because he was on the floor and not resisting).

Regarding the objective component, a reasonable jury could find that the use of force was more than *de minimis*. Viewing the record in Plaintiff's favor, he was struck several times in the head while he was shackled, on the ground, not resisting. This would certainly violate contemporary standards of decency. *See Cordell v. McKinney*, 759 F.3d 573, 585–86 (6th Cir. 2014) (quoting *Schreiber v. Moe*, 596 F.3d 323, 332 (6th Cir. 2010) ("We have held in the past that 'striking a neutralized suspect who is secured by handcuffs is objectively unreasonable.' . . . [W]e doubt that slamming a handcuffed and controlled prisoner headfirst into a concrete wall comports with human decency."). Plaintiff says the force was serious enough to render him briefly

7

unconscious and reopen his head wound. (Doc. 1-4 at 3; Doc. 3 at 5). A reasonable jury could determine that the infliction of pain on Plaintiff was sufficiently serious to violate the Eighth Amendment.

All told, this claim hinges on a credibility determination that is reserved for a jury. Ashcraft has not adduced evidence that makes Plaintiff's version of events incredible, and—were a jury to accept that version of events—it could find that both the subjective and objective components of Plaintiff's claim were satisfied.

Beyond challenging the merits of Plaintiff's constitutional claim, Ashcraft has asserted qualified immunity as a defense. But Ashcraft is not immune from liability. "Qualified immunity shields an officer from suit when she makes a decision that, even if constitutionally deficient, reasonably misapprehends the law governing the circumstances she confronted." *Taylor v. Riojas*, 592 U.S. ––––, 141 S.Ct. 52, 53 (2020). "The qualified immunity standard 'gives ample room for mistaken judgments' by protecting 'all but the plainly incompetent or those who knowingly violate the law.'" *Hunter v. Bryant*, 502 U.S. 224, 229 (1991) (per curiam) (quoting *Malley v. Briggs*, 475 U.S. 335, 343 (1986)). "The contours of the [violated] right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). Since Ashcraft has raised the qualified immunity defense, Plaintiff bears the burden of showing that defendants are not entitled to qualified immunity. *Johnson v. Moseley*, 790 F.3d 649, 653 (6th Cir. 2015) (quoting *Reilly v. Vadlamudi*, 680 F.3d 617, 623 (6th Cir. 2012)).

As described above, there is sufficient caselaw surrounding assaults on nonresistant or restrained plaintiffs to put Ashcraft on notice that the force alleged violated the Eighth

8

Amendment. *See, e.g.*, *Alspaugh*, 643 F.3d at 168–69; *Schreiber*, 596 F.3d at 332. Until a jury resolves the factual disputes surrounding the assault, Ashcraft is not entitled to qualified immunity.

Accordingly, the Undersigned **RECOMMENDS** that Defendants' Motion (Doc. 30) be **DENIED** as it relates to Defendant Ashcraft.

### B. Demetrius Yates

Plaintiff says that Yates was present in the medical exam room when Ashcraft assaulted him but did nothing to stop it and never reported it. (Doc. 3 at 4). Yates raises no independent arguments on his behalf in the Motion for Summary Judgment. (*See* Doc. 30). Rather, like Ashcraft, he relies only on their joint account that no assault happened. For the same reasons as above, that presents a credibility determination which is beyond the Court in deciding motions for summary judgment.

In reply to the Motion, Yates raises a separate argument that Plaintiff has not alleged his personal involvement in the constitutional violation and is impermissibly trying to proceed under a theory of *respondeat superior*. (Doc. 39 at 13–14). First, it is impermissible to reserve issues for reply, so the argument must fail for procedural reasons. *In re FirstEnergy Corp. Securities Litig.*, 316 F. Supp. 2d 581, 599 (N.D. Ohio 2004) (citing *United States v. Campbell*, 279 F.3d 392, 301 (6th Cir. 2002) ("It is well-established that a party cannot raise new issues in a reply brief; he can only respond to arguments raised for the first time in opposition."). And, the argument fails on its merits too.

Plaintiff has not included Yates in this suit merely because he had some supervisory function over Ashcraft. Rather, Plaintiff has alleged that Yates witnessed the assault and could have intervened, but failed to do so. Liability can arise from inaction. Indeed, "there are circumstances under which police officers can be held liable for failure to protect a person from

9

the use of excessive force." *Turner v. Scott*, 119 F.3d 425, 429 (6th Cir. 1997) (citations omitted). An officer is liable for failure to prevent excessive force "when (1) the officer observed or had reason to know that excessive force would be or was being used, and (2) the officer had both the opportunity and the means to prevent the harm from occurring." *Id.* (citation omitted). This law applies in equal measure to corrections officers. *See Batson v. Hoover*, 788 F. App'x 1017, 1021–22 (6th Cir. 2019); *McHenry v. Chadwick*, 896 F.2d 184, 188 (6th Cir. 1990) ("[A] correctional officer who observes an unlawful beating may, nevertheless, be held liable under § 1983 without actively participating in the unlawful beating."). This makes sense, given that the government has "stripped [prisoners] of virtually every means of self-protection and foreclosed their access to outside aid[.]" *Farmer v. Brennan*, 511 U.S. 825, 833 (1994). For this reason, prison officials owe a duty to prisoners to protect them from violence. *Id.*

Crediting Plaintiff's version of events, Yates was present in the exam room when Ashcraft used excessive force. And, given that he says the assault occurred in a sequence of events—Ashcraft first slamming Plaintiff to the ground, and then striking him in the head several times—it is not unreasonable to conclude that the assault lasted long enough for Yates to have had the opportunity and means to prevent the harm from occurring. *Cf. Burgess v. Fischer*, 735 F.3d 462, 475–76 (6th Cir. 2013) (finding facts insufficient to show opportunity and means to prevent harm where plaintiffs themselves "d[id] not contend that the takedown lasted any more than ten seconds"); *Kowolonek v. Moore*, 463 F. App'x 531, 539 (6th Cir. 2012) (no opportunity and means where instance of excessive force included only single use of taser); *Ontha v. Rutherford Cty., Tenn.*, 222 F. App'x 498, 506 (6th Cir. 2007) (no opportunity and means where instance of excessive force lasted six to seven seconds). Again, because Yates disputes the use of force altogether, he has not adduced any evidence to suggest that the assault unfolded so quickly that he

10

had no means or opportunity to prevent the harm. So, if a reasonable jury were to credit Plaintiff's testimony, it could find that both elements of the failure to intervene claim are met.

Yates also raises a qualified immunity defense. But, as described above, caselaw surrounding both the underlying assault and the duty to intervene are sufficient to put Yates on notice that his alleged conduct violated the Eighth Amendment. Until a jury resolves the factual disputes surrounding the assault, Ashcraft is not entitled to qualified immunity. Accordingly, the Undersigned **RECOMMENDS** that Defendants' Motion (Doc. 30) be **DENIED** as it relates to Plaintiff's failure to intervene claim against Defendant Yates.

To the extent Plaintiff may be bringing a separate claim against Yates for failure to report the use of excessive force, Plaintiff cites no law establishing a constitutional duty to report. Nor has the Undersigned found any such authority in this Circuit. So, regarding any failure to report claim against Defendant Yates, the Undersigned **RECOMMENDS** that Defendants' Motion (Doc. 30) be **GRANTED**.

### C. John Boykin

Plaintiff says that Boykin also witnessed Ashcraft's assault and failed to intervene or report it. (Doc. 3 at 5). In particular, Plaintiff says Boykin was in the infirmary's dental office, across from the exam room, and was looking out a window. (*Id.*; Doc. 1-4 at 6). Boykin says Plaintiff's claim must fail for several reasons: (1) he never witnessed any assault; (2) he is a private individual working for a healthcare company that contracts with the Ohio Department of Rehabilitation and Corrections, and should not therefore be considered a state actor; and, assuming there was an assault, (3) he had no duty or authority to intervene on the actions of a corrections officer; and (4) no duty to report it. (Doc. 31 at 4–5).

Boykin's declaration that he never witnessed an assault (*see* Doc. 33, ¶ 8), which is only supported by the declarations of other Defendants, is insufficient for summary judgment for the same reason as outlined above—it requires a credibility determination between the Defendants and Plaintiff. Additionally, regarding Boykin's argument that he is not a state actor, "an individual need not be a formal 'public employee' to qualify as a state actor because governments have long carried out their duties using private agents." *Phillips v. Tangilag*, 14 F.4th 524, 532 (6th Cir. 2021) (citation omitted). For this reason, individuals who perform services at prisons can in some cases inherit the state's duty under the Eighth Amendment to safeguard prisoners' wellbeing. *Id.* (citing *DeShaney v. Winnebago Cty. Dep't of Soc. Servs.*, 489 U.S. 189, 199–200). For example, the Supreme Court of the United States found that an orthopedic specialist who operated two weekly clinics at a prison acted under color of state law and assumed a duty to provide adequate medical care to prisoners, even though he was a private physician. *West v. Atkins*, 487 U.S. 42 (1988); *see also Carl v. Muskegon Cty.*, 763 F.3d 592, 595–57 (6th Cir. 2014) (applying the premise from *West* and finding that private psychologist working under contract with a jail was acting under color of state law, despite lack of "direct employment relationship"). That said, because Boykin served as "the institutional dentist" at LeCI (Doc. 33, ¶ 6), he is a state actor under § 1983.

While a medical professional like Boykin most clearly assumes the duty for adequate medical care that the state owes to prisoners, he may assume other duties of care under the Eighth Amendment as well. *See, e.g.*, *Burgess*, 735 F.3d at 475–76 (assessing a nurse's liability for failure to intervene because she was present during a "takedown" of pretrial detainee by corrections officers); *Durham v. Nu'Man*, 97 F.3d 862, 868 (reversing district court grant of summary judgment in favor of nurse for failure to intervene, because her actions precipitated use of force by

officers and "precedent holding police officers and correctional officers liable for failure to intervene was sufficient to place the nurse who caused the conflict on notice that she had a duty to protect plaintiff while under her charge[.]"). So, just because Boykin is a private physician does not mean he is insulated from potential liability in Plaintiff's excessive force claim.

Still, the facts here do not support that Boykin had reason to know excessive force was being used, nor had the means and opportunity to prevent the harm Plaintiff alleges. Unlike Yates, Boykin was not in the immediate vicinity of the alleged assault. Rather, Plaintiff says he was across the hall, in a separate room, looking through a window. (*See* Doc. 1-4 at 6). Plaintiff's representations on this point have been somewhat mixed. During the grievance process, he first suggested that Boykin only saw him in the aftermath of the assault, as he was leaving the exam room. (Doc. 1-4 at 5) (Plaintiff claiming that after "Ashcraft assaulted [him] and [he] picked [him]self off the ground" and he "was w[al]king out the door[,]" he saw "Boykin looking out the door of the dentist room"). This coheres with Boykin's own declaration, in which he says that he witnessed two corrections officers, one of whom he recognized as Ashcraft, escorting an inmate from the exam room, but saw nothing else. (Doc. 33, ¶ 9). Later, Plaintiff said instead that Boykin was "looking out the dental door window the whole time when the assault happen[ed]." (Doc. 1-4 at 6).

Even accepting Plaintiff's later statement as true, a reasonable jury could not find that Boykin is liable for a failure to protect Plaintiff. First, Boykin must have had reason to know the force he allegedly observed was excessive force. *Turner*, 119 F.3d at 429. In other words, he must have had reason to know that the force was not being applied in a good faith effort to maintain or restore discipline but was instead being applied "maliciously and sadistically for the very purpose of causing harm." *Williams*, 631 F.3d at 383. Yet, because he was observing from behind two

closed doors and across a hallway, it would be unreasonable to conclude that he understood the purpose of the force and could discern that the officers were not making a good faith effort to restrain Plaintiff. In other words, it would be impossible for him to understand the context of the force.

Similarly, it is unreasonable to conclude that from Boykin's vantage, he had the means and opportunity to intervene and prevent the assault. At base, Boykin was not directly involved in the circumstances surrounding Plaintiff's assault, and so he is entitled to summary judgment on Plaintiff's claim for failure to intervene. *See Gessner v. Saylors*, No. 3:16-cv-234, 2018 WL 2725435, at *5 (S.D. Ohio June 6, 2018) (finding that officer who was occupied escorting another arrestee was entitled to summary judgment for failure to intervene on his partner's use of excessive force on plaintiff); *Thomas v. City of Columbus*, No. 2:15-cv-2469, 2017 WL 4217155, at *9 (S.D. Ohio Sep. 20, 2017) (finding that officer stationed outside apartment building where alleged excessive force arrest occurred was entitled to summary judgment for failure to intervene); *but see Goodwin v. City of Painesville*, 781 F.3d 314, 329 (6th Cir. 2015) (affirming denial of qualified immunity to officers who failed to intervene in extended use of taser on plaintiff in front of them, because the case involved "a prolonged application of force and the officers who allegedly failed to protect were directly involved.").

And, to the extent Plaintiff brings a claim for failure to report the use of excessive force, that fails for the same reason as identified above regarding Defendant Yates. Accordingly, the Undersigned **RECOMMENDS** that Defendant Boykin's Motion for Summary Judgment (Doc. 31) be **GRANTED**.

### D. Quinnlan Berry

Plaintiff's final claim is brought against Berry, the corrections officer who pepper sprayed Plaintiff's cellmate and subsequently ordered Plaintiff to return to his cell. Significantly, Plaintiff says Berry did not directly assault him. (*See* Doc. 38 at 8). Instead, he says that she subjected him to cruel and unusual punishment by requiring him to enter a cell which purportedly had residual pepper spray. (Doc. 3 at 4–6). Berry characterizes Plaintiff's claim as an excessive force claim, and says the claim fails to meet the requisite subjective and objective components. (Doc. 30 at 7–12). But this claim is more easily understood as a claim for deliberate indifference. Indeed, in response to the Motion for Summary Judgment, Plaintiff says Berry was "deliberately indifferent towards [his] health and safety." (Doc. 38 at 8). Yet, because these claims both arise under the Eighth Amendment, they share certain contours regarding objective risk of harm and Berry's subjective intent, so her arguments largely translate. All told, the Undersigned concludes that a reasonable jury could not find that Berry's actions, even viewed in a light most favorable to Plaintiff, give rise to liability under the Eighth Amendment.

Berry has adduced evidence supporting the following sequence of events. Plaintiff was returned to his cell in restrictive housing following the alleged assault by Ashcraft. A policy in restrictive housing requires that, when returning an inmate to his cell, his cellmate must be secured in restraints before the door is breached. (Doc. 30-5 at 8). Accordingly, Berry asked Plaintiff's cellmate, Michael Keister, to place his hands in the cell's cuff port, so she could place restraints on him. (*Id.* at 11). He refused, and was given several more directives, with the intervention of a crisis negotiator. (*Id.*). Still not compliant, Keister was given a final directive to put his hands in the cuff port and warned that Berry would use pepper spray if he did not. (*Id.*). He again refused

and Berry sprayed him. (*Id.*). He then became compliant and was secured in restraints and taken to the infirmary. (*Id.*). Plaintiff was then placed back into the cell. (Doc. 30-4, ¶ 7).

Plaintiff does not refute any of these events. (*See* Doc. 1-4 at 10). He adds, however, that he told Berry he did not want to return to the cell because pepper spray had been used in the cell and he had an open head wound. Plaintiff claims that Berry responded: "That's what the fuck you get. Get in there before I spray you." (*Id.* at 12).

The Eighth Amendment requires that prison officials "take reasonable measures to guarantee the safety of its inmates." *Curry v. Scott*, 249 F.3d 493, 506 (6th Cir. 2001) (quoting *Farmer v. Brennan*, 511 U.S. 825, 832 (1994)). A claim for failure to take such reasonable measures requires a showing that a prison official acted with "deliberate indifference" to a substantial risk of harm. *Id.* (quoting *Farmer*, 511 U.S. at 834). This has both an objective and subjective component. *Id.* The objective component for a claim based on the failure to prevent harm requires that the inmate "show that he is incarcerated under conditions posing a substantial risk of serious harm." *Id.* (quoting *Farmer*, 511 U.S. at 834). And, the subjective component requires that the prison official had "a sufficiently culpable state of mind." *Id.* (quoting *Farmer*, 511 U.S. at 834). This means that "the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* (quoting *Farmer*, 511 U.S. at 837).

Regarding the objective component, Plaintiff has not created a genuine dispute that the conditions of his cell posed a substantial risk of serious harm. The parties do not dispute that Berry pepper sprayed Keister while he was in the cell. Yet, importantly, the contemporaneous accounts from prison officials collected in the use-of-force report uniformly note that the burst of pepper

16

spray was small and directed toward Keister's face. (Doc. 30-5). Plaintiff does not meaningfully rebut these accounts. So, to the extent that the Keister incident left pepper spray residue in the cell, there is no evidence to suggest the residue was significant, nor that the risk it posed to Plaintiff was substantially serious.

Plaintiff says he suffered burning in his eyes and head wound from the pepper spray. But other courts have found that the burning effects of pepper spray, without more, are not sufficiently serious for deliberate indifference claims—even when plaintiffs have suffered direct application of pepper spray. *See, e.g*, *McDougald v. Bear*, No. 1:17-cv-124, 2019 WL 652501, at *7 (S.D. Ohio Feb. 15, 2019), *report and recommendation adopted by* 2019 WL 4126394 (S.D. Ohio Aug. 30, 2019) (collecting cases in which plaintiffs' complaints of difficulty breathing and burning in eyes, nose, lungs, and skin were not sufficient to demonstrate serious medical need under Eighth Amendment). Plaintiff has not suggested that—aside from his head wound—he has any condition that makes him uniquely susceptible to harms from pepper spray. And, while Plaintiff says that his experience in the cell was painful, he does not suggest that he suffered any lingering harm. Plaintiff says he asked a corrections officer working in restrictive housing to see medical (Doc. 1-4 at 11), but crucially has never named that officer, nor represented that he made any further attempts to seek medical care. Because Plaintiff has not adduced sufficient evidence for a reasonable jury to find that he was exposed to a substantial risk of serious harm, his claim for deliberate indifference cannot succeed, and Defendant Berry is entitled to summary judgment.

Again, the Undersigned notes briefly that this claim is not legible as an excessive force claim. Berry, by Plaintiff's own admission, did not directly use any force against him. (Doc. 38 at 8). At most, she warned or threatened that she would use pepper spray if he did not return to his cell.

Berry also raises a qualified immunity defense. Qualified immunity is proper when either the officer's behavior was not constitutionally violative or the officer acted reasonably in a way which they did not believe violated any constitutional rights. *Taylor*, 141 S. Ct. at 53. As described above, the Undersigned finds that no constitutional violation has occurred. As a result, Berry enjoys qualified immunity.

For all these reasons, the Undersigned **RECOMMENDS** that Defendants' Motion for Summary Judgment (Doc. 30) be **GRANTED** with respect to Defendant Berry.

### E. Motion to Appoint Counsel

Finally, the Undersigned notes that Plaintiff has a pending Motion for Appointment of Counsel (Doc. 41). The Undersigned will hold that Motion in abeyance until the District Judge has ruled upon her Report and Recommendation and determined which claims should proceed to be tried on their merits.

### IV. CONCLUSION

For the foregoing reasons, the Undersigned **RECOMMENDS** that Defendants' Motion for Summary Judgment (Doc. 30) be **DENIED** as it relates to Plaintiff's excessive force claim against Defendant Ashcraft and failure to intervene claim against Defendant Yates, but **GRANTED** with respect to any failure to report claim against Defendant Yates, as well as the claim against Defendant Berry. The Undersigned further **RECOMMENDS** that Defendant Boykin's Motion for Summary Judgment (Doc. 31) be **GRANTED**.

### Procedure on Objections

If any party objects to this Report and Recommendation, that party may, within fourteen (14) days of the date of this Report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting

authority for the objection(s). A District Judge of this Court shall make a *de novo* determination of those portions of the Report or specific proposed findings or recommendations to which objection is made. Upon proper objection, a District Judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence, or may recommit this matter to the Magistrate Judge with instructions. 28 U.S.C. § 636(b)(1).

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to have the district judge review the Report and Recommendation *de novo*, and also operates as a waiver of the right to appeal the decision of the District Court adopting the Report and Recommendation. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

IT IS SO ORDERED.

Date: September 25, 2023

/s/ Kimberly A. Jolson
KIMBERLY A. JOLSON
UNITED STATES MAGISTRATE JUDGE